By the Court—Bosworth, Ch. J.
This-action-is-brought to recover the value of certain sheds and fixtures sold and delivered by Lyon & Haff to the defendants.. There is no controversy as to the fact of a sale and delivery of the property, or as to the terms of the contract. The sum, or price to- be paid was not agreed upon by the parties..
The contract of sale provided a mode of ascertaining the price to be paid, and if that has been ascertained in the maimer provided, the plaintiffs are entitled to recover.
Ho point was made at the trial or on the argument of the appeal, that Barney and Wright were not unable to agree. There can be none that they did not select White to act in the matter.
Wright testifies that he and Barney “ agreed to call in Robert White,” and they two-went to see him. “I told him we could not agree, then read the agreement signed by the parties, and asked if he would serve ;■ he objected at first; we both persuaded him to go ; we went and examined the premises; he told us he would let us know his valuation next morning—what his opinion was.” The next morning the three met again and compared opinions and separated.
“ A few days'after this, Barney, White and myself met again at the shedk;- White said he could not vary from his first valu *564 ation ; that they were worth the full amount; we examined the sheds.”
Barney's testimony is, that he, Wright and White met twice on the matter of agreeing upon a valuation of the sheds, and that White said, on the occasion of the second meeting, that “ he could not alter his appraisal.”
White’s testimony is to the same effect.
Tire fact is established, therefore, by the concurring testimony of the three, that they all met together to examine the sheds, and did examine them, and separated. The next morning they met again, mentioned their respective valuations, and then separated. After this the three had another meeting on the subject, and White told them he should adhere to his valuation, viz., $2,550. Wright, who originally valued them at $2,275, testifies that he subsequently changed his opinion, and regarded them worth $2,550 when he signed the certificate with White. The certificate of valuation signed by the two is in a proper form, and imports that the valuation was made in the manner prescribed by the contract of sale.
The jury found a verdict for one-half of the amount of the valuation; the defendants having, pending the suit, settled with Lyon as to one-half of the claim.
Unless some of the defendants’ exceptions are well taken, the verdict should not be disturbed.
The defendants excepted to the refusal of the Court to submit to the jury the proposition embraced in their request to the Court to charge, that “if, when the appraisers were last together they separated agreeing to meet again; Wright and White had no' power, in the absence of Barney, or without notifying him of a time of meeting, -to make an appraisal.”
It is enough to say of this exception, that there was no evidence entitling the defendants to have that question submitted.
Barney testifies that at the last meeting had by the three, he proposed to Wright that the sheds should be appraised at one-third of their cost, and they went into an office in the yard of the premises to reduce to writing an agreement which he understood had been come to, on the basis of that proposition. But they found that they had misunderstood each other as to that -matter, or at all events differed about it. He says, “We then separated *565 understanding that Wright was to see the plaintiffs, and we meet again.” It is obvious that if Wright was to see the plaintiffs, he was to see them about the proposition which Barney had made, and the future meeting, if any, was to be between him and Wright to learn the plaintiffs’ views.
White testifies that nothing was said to him on that occasion “ about meeting again.” He, of course, did not agree to meet with the others again, nor have any intimation that another meeting was desired by either of them. Barney, at the most, testifies that he “understood” they were to meet again, but he does not testify that anything was said about another meeting.
Wright says, “ I might have said to Barney I would see my parties about thisthat is, about the proposition to pay one-third of the original cost of the sheds. The testimony of Robins and White tends to show that Wright was to see the plaintiffs relative to this proposition.
I do not think this testimony would justify a jury in finding that, “ when the appraisers were last together, they separated agreeing to meet again.” If this view be correct, then there should not be a new trial, because of the refusal to submit this question to the jury.
The exception taken to the concluding part of the charge, is attempted to be supported on the ground that- if White was selected under an agreement between Wright and Barney, that he should determine the value and they would be bound by it, the selection for such a purpose was a void act, and he was not authorized to act at all.
The proposition charged was, that although he may have been so selected, yet if this agreement or understanding was abandoned, and if they did in fact meet and examine the property together, with a view to determine, and for the purpose of determining its value, and if the certificate was signed in good faith, as expressing the honest judgment of the two thus formed, the appraisal is valid.
It seems to us, that from the time the three met and together examined the property with a view, by their joint action, to reach a valuation which, in their opinion, was just-, White was in fact selected “ to assist them in the appraisement.”
*566 If it be assumed that the jury may have found the question of fact covered by the first branch of the charge in favor of the defendants, then it must be taken as true that they also found that the three, nevertheless, “ afterwards met and examined -the property with a view to and for the purpose of determining its value, and that the valuation of $2,550 was finally assented to and agreed upon by Wright, because such, in his judgment, was a fair and just value of the property, and also that such was the opinion and judgment of White.”
They have found such to be the facts, having before their minds the further instruction that “the parties have a right to an appraisal made upon the honest effort of the three to fix a just valuation, based upon such information as they deemed useful in • coming to a correct conclusion, and upon an interchange between them of the views which they severally thought should influence them in determining such value.”
Such joint action of the three, with such motives and for such purposes, is, so far as White is concerned, the action of a third party selected by Barney and Wright “to assist them in the appraisement,” and presents a case in which those two have acted, in spirit and substance, as the contract for determining the price prescribed.
The judgment and order appealed from should be affirmed. Judgment affirmed.